## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF GEORGIA
## MACON DIVISION

| | | |
|---|---|---|
| **DEANTE GHOLSTON,** | : | |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| **V.** | : | |
| | : | **NO. 5:22-cv-00362-MTT-CHW** |
| **WARDEN JOSEPH POLITE,** *et al.,* | : | |
| | : | |
| **Defendants.** | : | |
| | : | |

## ORDER & RECOMMENDATION

Plaintiff Deante Gholston, a prisoner currently being held in Hays State Prison in Trion, Georgia, filed a complaint pursuant to 42 U.S.C. § 1983. Compl., ECF No. 1. Plaintiff subsequently filed a motion for leave to proceed in this action *in forma pauperis*. Mot. for Leave to Proceed *In Forma Pauperis*, ECF No. 11; Mot. for Leave to Proceed *In Forma Pauperis*, ECF No. 15. Plaintiff's motion to proceed *in forma pauperis* was granted, and he was ordered to pay an initial partial filing fee of $20.56. Order, ECF No. 18. Plaintiff has now paid the initial partial filing fee, and thus, his complaint is ripe for preliminary review.

On that review, Plaintiff will be permitted to proceed for further factual development on his excessive force claim against IRT members Williams and Jeans Caceres. Plaintiff will also be allowed to proceed on his claim that Warden Joseph Polite, Deputy Warden Joe Williams, Deputy Warden George Ball, Unit Manager Dennis Turner, and Captain Kerwin Greene were responsible for the use of excessive force by IRT

members Williams and Caceres.   It is **RECOMMENDED** that Plaintiff's claims against the Doe OPS managers and his due process claims be **DISMISSED WITHOUT PREJUDICE** for failure to state a claim.

## PRELIMINARY REVIEW OF PLAINTIFF'S COMPLAINT

I.    Standard of Review

Because he has been granted leave to proceed *in forma pauperis*, Plaintiff's complaint is now ripe for preliminary review.   *See* 28 U.S.C. § 1915A(a) (requiring the screening of prisoner cases) & 28 U.S.C. § 1915(e) (regarding *in forma pauperis* proceedings).   When performing this review, the court must accept all factual allegations in the complaint as true.   *Brown v. Johnson*, 387 F.3d 1344, 1347 (11th Cir. 2004).   *Pro se* pleadings are also "held to a less stringent standard than pleadings drafted by attorneys," and thus, *pro se* claims are "liberally construed."   *Tannenbaum v. United States*, 148 F.3d 1262, 1263 (11th Cir. 1998).   Still, the Court must dismiss a prisoner complaint if it "(1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief."   28 U.S.C. §1915A(b).

A claim is frivolous if it "lacks an arguable basis either in law or in fact."   *Miller v. Donald*, 541 F.3d 1091, 1100 (11th Cir. 2008) (internal quotation marks omitted).   The Court may dismiss claims that are based on "indisputably meritless legal" theories and "claims whose factual contentions are clearly baseless."   *Id.* (internal quotation marks omitted).   A complaint fails to state a claim if it does not include "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"   *Ashcroft v. Iqbal*,

556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The factual allegations in a complaint "must be enough to raise a right to relief above the speculative level" and cannot "merely create[] a suspicion [of] a legally cognizable right of action." *Twombly*, 550 U.S. at 555 (first alteration in original). In other words, the complaint must allege enough facts "to raise a reasonable expectation that discovery will reveal evidence" supporting a claim. *Id.* at 556. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

To state a claim for relief under §1983, a plaintiff must allege that (1) an act or omission deprived him of a right, privilege, or immunity secured by the Constitution or a statute of the United States; and (2) the act or omission was committed by a person acting under color of state law. *Hale v. Tallapoosa Cty*, 50 F.3d 1579, 1582 (11th Cir. 1995). If a litigant cannot satisfy these requirements or fails to provide factual allegations in support of his claim or claims, the complaint is subject to dismissal. *See Chappell v. Rich*, 340 F.3d 1279, 1282-84 (11th Cir. 2003).

II.  Plaintiff's Allegations

In his complaint, Plaintiff asserts that on August 26, 2022, an IRT member was refusing Plaintiff and others "table time" as required by a settlement agreement in a different case.  Attach. to Compl. 3, ECF No. 1-3.  Plaintiff began speaking out about the situation and encouraged others to do so, which angered IRT members.  *Id.*  Plaintiff had previously verbally complained, filed grievances, and written to Warden Joseph Polite, Deputy Warden of Security George Ball, Unit Manager Dennis Turner, Deputy Warden of

Security Joe Williams, and Captain Kerwin Greene numerous times about these violations. *Id.* On this occasion, another inmate, Marcus Sutton, was upset about being denied table time and was repeatedly told to calm down. *Id.* Plaintiff was told that he needed to stop trying to get everyone to go to the tables. *Id.*

At dinner time that evening, Commander Bray, IRT Jean Caceres, and IRT Williams were passing out trays, but they did not give one to Sutton. *Id.* at 4. Plaintiff saw this, and when they approached his cell, he wrapped his arm in a blanket before sticking it out of the tray flap and asking that Sutton be given a tray. *Id.* Plaintiff explains that he wrapped his arm first because he knows that IRT can be "violent and aggressive," and that they "seek chances to hurt people." *Id.* When Plaintiff stuck his arm through the flap, IRT Caceres immediately sprayed Plaintiff with nearly a whole can of chemical spray. *Id.* Then, he and IRT Williams began forcefully kicking and stomping Plaintiff's hand and arm, sprayed him with more spray, and continued kicking him. *Id.* During this, they dislocated one of Plaintiff's fingers and one of his fingers was cut on the door flap. *Id.*

Plaintiff pulled his hand back into the cell to try to stop the bleeding. *Id.* Plaintiff was able to pop the dislocated finger back into place. *Id.* At some point, IRT came to Plaintiff's cell and took him to medical where he was seen by Nurse Joseph, who cleaned the wound. *Id.* She gave Plaintiff Tylenol but did not write anything down, so Plaintiff showed her the swollen and bruised finger that Caceres and Williams had dislocated. *Id.* While Plaintiff was in medical, the IRT members were "talking trash" to Plaintiff. *Id.*

After being returned to his cell, Plaintiff was placed in a strip cell. *Id.* Plaintiff complained to Nurse Joseph about pain in his wrist and hand. *Id.* He requested a sick

call, but instead Nurse Joseph brought him antibiotic cream, alcohol pads, and a bandage to wrap his fingers, wrist, and hand.   *Id.*

Thereafter, Plaintiff was served with a fabricated disciplinary report, which was thrown out at a disciplinary hearing.   *Id.*   Plaintiff alleges that the disciplinary report was allowed to expire because those involved knew that the IRT members were in the wrong when they kicked and stomped Plaintiff's hand. *Id.*   Plaintiff filed a grievance about the matter and requested an OPS investigation.   *Id.* at 5.

Prior to this incident, Plaintiff had informed Warden Polite, Deputy Warden Williams, Deputy Warden Ball, Captain Greene, OPS investigators, Unit Manager Turner, and the IRT commanders about violence by the IRT members.   *Id.*   Additionally, other inmates had reported the violence orally and in writing, but none of these officials did anything to stop the assaults.   *Id.*   Inmates have also spoken to the Southern Center for Human Rights because so many inmates have been subjected to excessive force.   *Id.*   At times, some of these officials have also personally participated in similar assaults.   *Id.*   Moreover, "officials write fabricated reports and falsify documents" to cover up wrongdoing.   *Id.*

Plaintiff states that Correctional Officer Carmyhah Robinson and Correctional Officer Nycuia Cruz are disciplinary report investigators and that they process the fabricated reports and falsify documents as well.   *Id.*   Plaintiff asserts that they fast track the disciplinary reports to biased hearing officers who push the disciplinary reports through the process.   *Id.* at 5-6.   When Plaintiff and others complain about the situation, money is taken from them.   *Id.* at 6.   Plaintiff asserts that Mr. Tillman told Plaintiff that he could

not file a grievance relating to the disciplinary report procedure, and Plaintiff acknowledged that it was true that he cannot grieve the disciplinary reports through an appeal if he is not provided with the proper forms and no one responds to his grievances. *Id.*

Officer Cruz told Plaintiff that she had appeal forms and disciplinary reports that she will let Plaintiff use to file an appeal because she knows he is being truthful, but as yet, she has not brought these forms for Plaintiff. *Id.* Plaintiff showed someone copies of disciplinary reports where the investigator "begged [Plaintiff] not to file a lawsuit." *Id.* Plaintiff told Polite, Williams, Ball, Greene, Tillman, Reynolds, Hayes, Robinson, Cruz, and Hargrove about this situation, but it continues. *Id.*

Plaintiff filed this lawsuit, asserting the following claims. First, Plaintiff asserts that IRT members Williams and Jean Caceres used excessive force against him when they sprayed him with chemicals and kicked and stomped his arm. *Id.* at 6-7. Second, Plaintiff asserts that Warden Polite, Deputy Warden Joe Williams, Deputy Warden Ball, Unit Manager Turner, Captain Greene, and John/Jane Doe Office of Professional Standards Managers were liable for the use of excessive force because they knew about the history of violence and failed to take action to correct the situation. *Id.* at 7. Third, Plaintiff asserts that Polite, Greene, and Cruz violated Plaintiff's rights by failing to provide him with due process before taking $4.00 per disciplinary report filed against him.[1] *Id.*

---

[1]Plaintiff initially included Officer Carmyhah Robinson as a defendant on this claim, but he later dismissed his claim as to Robinson.

III.   <u>Plaintiff's Claims</u>

    A.   <u>Excessive Force</u>

        1.   <u>IRT Members Williams and Caceres</u>

Plaintiff's first claim is that IRT Members Williams and Caceres used excessive force against him by spraying him with chemicals and kicking and stomping on his hand. The Eighth Amendment clearly prohibits the unnecessary and wanton infliction of pain, the infliction of pain without penological justification, and the infliction of pain grossly disproportionate to the severity of the offense.   *Ort v. White*, 813 F.2d 318, 321 (11th Cir. 1987) (citing *Rhodes v. Chapman*, 452 U.S. 337, 346 (1981)).   To state an Eighth Amendment claim in this context, a plaintiff must allege conduct by a defendant that was objectively harmful enough to establish a constitutional violation and allege that the defendant acted with a sufficiently culpable state of mind, that is, that the defendant acted maliciously and sadistically to cause harm.   *Hudson v. McMillian*, 503 U.S. 1, 6-7 (1992).

Plaintiff asserts that he put his hand through the tray flap to try to get the officers to feed another inmate.   Although Plaintiff was acting in a sort of protest, it appears possible from his allegations that the response by IRT members Williams and Caceres was within the range of actions that constitutes excessive force.   Accordingly, Plaintiff will be permitted to proceed for further factual development on his excessive force claim against Williams and Caceres.

        2.   <u>Supervisory Officials</u>

Plaintiff also seeks to hold Warden Polite, Deputy Warden Joe Williams, Deputy Warden Ball, Unit Manager Turner, and Captain Greene responsible on this claim.   To

state a claim against a supervisory official, a prisoner must allege facts showing either that the supervisor personally participated in the alleged constitutional violation or that there is a causal connection between the actions of the supervising official and the alleged constitutional deprivation. *H.C. by Hewett v. Jarrard*, 786 F.2d 1080, 1086-87 (11th Cir. 1986). This may be done by alleging facts showing that the official either "(1) instituted a custom or policy which resulted in a violation of the plaintiff's constitutional rights; (2) directed his subordinates to act unlawfully; or (3) failed to stop his subordinates from acting unlawfully when he knew they would." *Gross v. White*, 340 F. App'x 527, 531 (11th Cir. 2009) (per curiam) (citing *Goebert v. Lee County*, 510 F.3d 1312, 1331 (11th Cir. 2007)).

Plaintiff asserts facts showing that these defendants were repeatedly made aware by Plaintiff and other inmates of ongoing violence and use of excessive force by IRT members. According to Plaintiff, not only did these defendants fail to correct the violence, some of them participated in it and helped to cover it up through the use of false disciplinary reports. Accepted as true and construed them in Plaintiff's favor, these allegations suggest that these defendants knew that the IRT members were continuously acting unlawfully with regard to the use of excessive force and that they allowed this to happen. Thus, Plaintiff will also be permitted to proceed for further factual development on his claims that Warden Polite, Deputy Warden Joe Williams, Deputy Warden Ball, Unit Manager Turner, and Captain Greene were responsible for the use of excessive force by IRT members Williams and Caceres.

### 3.   Doe OPS Managers

Plaintiff also includes unnamed OPS managers as defendants in this action. Fictitious party pleading, *i.e.*, bringing claims against John Doe defendants, is generally only permitted in federal court when the plaintiff's description of the defendant is so specific that the party may be identified for service even though his or her actual name is unknown.   *See Richardson v. Johnson*, 598 F.3d 734, 738 (11th Cir. 2010).   In this regard, Plaintiff provides no description of the defendant OPS managers from which they could be identified for service.   Moreover, Plaintiff makes general allegations that he and others communicated with OPS investigators, but he does not include any specific allegations that he communicated with any particular person within the OPS to show that they were aware of ongoing issues such that they may have been responsible on these claims.   Accordingly, Plaintiff has not stated a claim in this regard, and it is **RECOMMENDED** that Plaintiff's claims be **DISMISSED WITHOUT PREJUDICE** as to the Doe OPS managers.

### B.   Due Process

Plaintiff also asserts that Warden Polite, Captain Greene, and Officer Cruz have violated his right to due process by taking money from him in relation to falsified disciplinary reports.   To state a claim for denial of due process, a plaintiff must allege that he was deprived of life, liberty, or property without due process of law.   *See Wolff v. McDonnell*, 418 U.S. 539, 556 (1974) (recognizing that prisoners "may not be deprived of life, liberty, or property without due process of law").   The Due Process Clause of the Fourteenth Amendment is not offended when a government official deprives an individual of his personal property if the state makes available a meaningful post-deprivation remedy.

*Hudson v. Palmer*, 468 U.S. 517, 533 (1984).   The State of Georgia provides Plaintiff an adequate post-deprivation remedy for the loss of his property through a state court action. *See* O.C.G.A. §§ 51-10-1 through 51-10-6; *see also Lindsey v. Storey*, 936 F.2d 554, 561 (11th Cir. 1991) (finding no due process violation for the retention of the plaintiffs' cash by the police because Georgia "has provided an adequate post deprivation remedy" in O.C.G.A. § 51-10-1).

Plaintiff asserts that the defendants have taken his money, which is his personal property.   As set forth above, Georgia law provides Plaintiff with a post-deprivation remedy for the loss of his property through a state court action.   Therefore, he has not stated a federal due process claim in this regard, and it is **RECOMMENDED** that this claim be **DISMISSED WITHOUT PREJUDICE** for that reason.

IV.   Conclusion

Therefore, as discussed above, Plaintiff will be permitted to proceed for further factual development on his excessive force claim against IRT members Williams and Caceres.   Plaintiff will also be allowed to proceed on his claim that Warden Polite, Deputy Warden Joe Williams, Deputy Warden Ball, Unit Manager Turner, and Captain Greene were responsible for the use of excessive force by IRT members Williams and Caceres.   It is **RECOMMENDED** that his claims against the Doe OPS managers and his due process claims be **DISMISSED WITHOUT PREJUDICE** for failure to state a claim.

**OBJECTIONS**

Pursuant to 28 U.S.C. § 636(b)(1), the parties may serve and file written objections to this order and recommendation with the United States District Judge to whom this case

is assigned **WITHIN FOURTEEN (14) DAYS** after being served with a copy of this order and recommendation.   The parties may seek an extension of time in which to file written objections, provided a request for an extension is filed prior to the deadline for filing written objections.   Any objection is limited in length to **TWENTY (20) PAGES**.   *See* M.D. Ga. L.R. 7.4.   Failure to object in accordance with the provisions of § 636(b)(1) waives the right to challenge on appeal the district judge's order based on factual and legal conclusions to which no objection was timely made.   *See* 11th Cir. R. 3-1.

### ORDER FOR SERVICE

For those reasons discussed above, it is hereby **ORDERED** that service be made on **DEFENDANT IRT MEMBER WILLIAMS, IRT MEMBER JEAN CACERES, WARDEN JOSEPH POLITE, DEPUTY WARDEN JOE WILLIAMS, DEPUTY WARDEN GEORGE BALL, UNIT MANAGER DENNIS TURNER, and CAPTAIN KERWIN GREENE**, and that they file an Answer, or other response as appropriate under the Federal Rules, 28 U.S.C. § 1915, and the Prison Litigation Reform Act.   Defendants are also reminded of the duty to avoid unnecessary service expenses, and the possible imposition of expenses for failure to waive service.

### DUTY TO ADVISE OF ADDRESS CHANGE

During this action, all parties shall at all times keep the Clerk of this Court and all opposing attorneys and/or parties advised of their current address.   Failure to promptly advise the Clerk of any change of address may result in the dismissal of a party's pleadings.

### DUTY TO PROSECUTE ACTION

Plaintiff must diligently prosecute his Complaint or face the possibility that it will

be dismissed under Rule 41(b) for failure to prosecute.   Defendants are advised that they are expected to diligently defend all allegations made against them and to file timely dispositive motions as hereinafter directed.   This matter will be set down for trial when the Court determines that discovery has been completed and that all motions have been disposed of or the time for filing dispositive motions has passed.

### FILING AND SERVICE OF MOTIONS, PLEADINGS, AND CORRESPONDENCE

It is the responsibility of each party to file original motions, pleadings, and correspondence with the Clerk of Court.   A party need not serve the opposing party by mail if the opposing party is represented by counsel.   In such cases, any motions, pleadings, or correspondence shall be served electronically at the time of filing with the Court.   If any party is not represented by counsel, however, it is the responsibility of each opposing party to serve copies of all motions, pleadings, and correspondence upon the unrepresented party and to attach to said original motions, pleadings, and correspondence filed with the Clerk of Court a certificate of service indicating who has been served and where (i.e., at what address), when service was made, and how service was accomplished (i.e., by U.S. Mail, by personal service, etc.).

### DISCOVERY

Plaintiff shall not commence discovery until an answer or dispositive motion has been filed on behalf of Defendants from whom discovery is sought by Plaintiff. Defendants shall not commence discovery until such time as an answer or dispositive motion has been filed.   Once an answer or dispositive motion has been filed, the parties

are authorized to seek discovery from one another as provided in the Federal Rules of Civil Procedure.   Plaintiff's deposition may be taken at any time during the time period hereinafter set out, provided that prior arrangements are made with his custodian.   Plaintiff is hereby advised that failure to submit to a deposition may result in the dismissal of his lawsuit under Fed. R. Civ. P. 37 of the Federal Rules of Civil Procedure.

**IT IS HEREBY ORDERED** that discovery (including depositions and the service of written discovery requests) shall be completed within 90 days of the date of filing of an answer or dispositive motion by Defendants (whichever comes first) unless an extension is otherwise granted by the Court upon a showing of good cause therefor or a protective order is sought by Defendants and granted by the Court.   This 90-day period shall run separately as to each Defendant beginning on the date of filing of each Defendant's answer or dispositive motion (whichever comes first).   The scheduling of a trial may be advanced upon notification from the parties that no further discovery is contemplated or that discovery has been completed prior to the deadline.

Discovery materials shall <u>not</u> be filed with the Clerk of Court.   No party shall be required to respond to any discovery not directed to him or served upon him by the opposing counsel/party.   The undersigned incorporates herein those parts of the Local Rules imposing the following limitations on discovery: except with written permission of the Court first obtained, INTERROGATORIES may not exceed TWENTY-FIVE (25) to each party, REQUESTS FOR PRODUCTION OF DOCUMENTS AND THINGS under Rule 34 of the Federal Rules of Civil Procedure may not exceed TEN (10) requests to each party, and REQUESTS FOR ADMISSIONS under Rule 36 of the Federal Rules of Civil

13

Procedure may not exceed FIFTEEN (15) requests to each party.   No party is required to respond to any request which exceed these limitations.

**REQUESTS FOR DISMISSAL AND/OR JUDGMENT**

Dismissal of this action or requests for judgment will not be considered by the Court in the absence of a separate motion accompanied by a brief/memorandum of law citing supporting authorities.   Dispositive motions should be filed at the earliest time possible, but no later than one hundred-twenty (120) days from when the discovery period begins.

**SO ORDERED and RECOMMENDED** , this 20th day of June, 2023.

s/ Charles H. Weigle
Charles H. Weigle
United States Magistrate Judge